The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on April 29, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: April 29, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LEONARD BROOKS, JR., | ) | Case No. 18-11376 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| DANIEL M. McDERMOTT, | ) | |
| U.S. TRUSTEE, | ) | Adversary Proceeding |
|     Plaintiff. | ) | No. 18-1095 |
| | ) | |
| v. | ) | |
| | ) | |
| LEONARD BROOKS, JR., | ) | |
|     Defendant. | ) | |

MEMORANDUM OF OPINION[1]

In this adversary proceeding, the U.S. Trustee seeks to deny Leonard Brooks, Jr. ("the debtor") a bankruptcy discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4)(A). For the reasons that follow, the Court denies the debtor a discharge for

---

[1] This Opinion is not intended for official publication.

transferring or concealing assets within one year of filing for bankruptcy with the intent to hinder, delay, or defraud creditors in violation of 11 U.S.C. § 727(a)(2)(A). The Court therefore finds it unnecessary to address the U.S. Trustee's other theories for denying the debtor a discharge.

## JURISDICTION

An action to determine an objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7 by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On March 14, 2018, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. (Case No. 18-11376, Docket No. 1). On May 16, 2018, the Court granted the U.S. Trustee's unopposed motion to extend time to object to discharge, extending the deadline until August 22, 2018. (Case No. 18-11376, Docket No. 20). On August 21, 2018, the U.S. Trustee filed the above-captioned adversary proceeding, asserting that the debtor transferred funds and concealed bank accounts in violation of 11 U.S.C. § 727(a)(2) and made false oaths on the Statement of Financial Affairs, Schedule A/B, and the declarations filed with various documents as well as during the Section 341 meeting of creditors in

2

violation of 11 U.S.C. § 727(a)(4)(A). (Adv. Pro. 18-1095, Docket No. 1). The Court held a trial on March 27, 2019. The Court heard testimony from the debtor and Catherine Lowman, a bankruptcy auditor with the office of the U.S. Trustee. The Court admitted U.S. Trustee exhibits 1–19, 23–25, and 31–36 without objection.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of each witness. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of the trial witnesses, exhibits admitted into evidence, and the parties' joint stipulations. Unless indicated otherwise, the following facts were established at trial by a preponderance of the evidence or were stipulated to by the parties.

*Joint Stipulations*

The parties submitted the following stipulations:

1. Defendant filed his voluntary Chapter 7 petition for relief on March 14, 2018.

2. Defendant is married and lists four dependent children ages 18, 16, 10, and 3.

3. Defendant's *Schedule A/B—Property, part 1, question 1*, discloses Defendant's interest in real property at 36465 Timberlane Drive, Solon, Ohio, and values that interest at $160,000.

4. Defendant's *Schedule A/B—Property, part 4 question 17*, lists a Chase Checking account with a balance of $20.

5. Defendant's *Schedule A/B—Property, part 4, question 19*, lists his interests in Kenloky Enterprises, Meshach Music Group LLC, and Brooks Entertainment LLC.

6. Defendant's *Schedule D—Creditors Who Have Claims Secured by Property* lists [debts] to Comerica Band and Loancare Servicing Center secured by the property located by the Timberlane Drive property.

7. Defendant's *Schedule E/F—Creditors Who Have Unsecured Claims* lists $365,518 of debt, which includes an $118,975 debt to Mercedes Benz Financial.

8. Defendant's *Schedule I—Your Income* lists monthly gross incomes of $11,538 and $3,768 for he and his wife, respectively.

9. Defendant's *Schedule J—Your Expenses* includes a $1,380 mortgage payment, $2,800 for the care of a minor child in New York, $1,900 for an apartment in Georgia, $500 for transportation between Cleveland and Georgia, $790 for the lease on wife's car, and $450 for vehicle insurance.

10. In the *Declaration About an Individual Debtor's Schedules*, Defendant declared under penalty of perjury that his schedules and summary of schedules are true and correct.

11. Part 2, question #4 of Defendant's *Statement of Financial Affairs ("SOFA")*, which asks "Did you have any income from employment or from operating a business during this year of the two previous calendar years?" lists 2018 year-to-date income of $11,870, 2017 income of -$4,520, and 2016 of -$5,240.

12. Part 6, question 15 of the SOFA, which asks "Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of

theft, fire, other disaster or gambling?" lists a stolen 2016 Mercedes Benz S550 in September 2017, for which Nationwide Insurance has not paid the claim.

13. Part 11, question 27 of the SOFA, which asks "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?" lists Brooks Entertainment, Kenloky Enterprises, and Meshach Music Group.

14. Defendant signed his SOFA declaring under penalty of perjury that his answers are true and correct.

15. Defendant appeared before Sheldon Stein, the Chapter 7 trustee, for the [Section] 341 meeting of creditors on June 26, 2018.

16. Defendant affirmed that he was personally familiar with the information contained in the petition, schedules, statements and related documents; the information contained therein was true and correct; and there were no errors or omissions to bring to the trustee's or the Court's attention.

17. Defendant testified that he had been out [of] work for two years, for about two years, not being able to get any clients, and then took a job recently to work for someone else.

18. Defendant testified he worked for Hitco Entertainment for about six months.

19. Defendant testified he did not have any other money coming in besides his paycheck.

20. Defendant testified that he held an interest in Kenloky Enterprises. Trustee Stein asked did the company [Kenloky] own anything, like file cabinets, desk, have a bank account or anything like that? He answered "No. I had a bank account, but no. It didn't have any assets."

21. Defendant testified that he held an interest in Meshach Music Group. Defendant testified that Meshach Music Group does not make any money but it operates.

22. Defendant testified that he held an interest in Brooks Entertainment. Defendant testified that Brooks Entertainment does not operate.

23. Defendant testified that he only has a personal bank account and that personal account is the only one to which he has access.

24. Defendant testified that his paycheck is deposited into his Chase personal account in his name.

25. Defendant later testified that his paycheck is deposited into his Kenloky business account and admitted that he has two Chase accounts.

26. Upon questioning by the U.S. Trustee representative if Defendant was an owner of the Kenloky business account, or just a signature on the account, Defendant testified that he is an owner.

27. Defendant testified the Nationwide insurance claim was still open and that he was never told it was a closed claim.

28. Defendant testified Nationwide Insurance wanted him to come in for a deposition regarding his claim and his then attorney advised him not to go.

29. Defendant did not appear before the Nationwide Insurance Company.

30. On August 8, 2018, Mr. Brooks appeared at the office of Reimer Law Co, attorneys for creditor Daimler Trust, for a [Rule] 2004 examination regarding the 2016 Mercedes Benz S Class automobile and any insurance pertaining to said vehicle.

31. Upon questioning by the U.S. Trustee representative why Defendant could not find somewhere more economical to live in Georgia, Defendant testified that he could not for where he needed to work, and that he is only living there to work. Defendant further testified that he works long studio hours and needs to be close to the studio.

(Docket No. 10)

*Background*

The debtor has worked in the entertainment business since he was a teenager and previously worked as a manager and promoter. As a manager and promoter, the debtor took care of the needs of the artists and entered into deals on their behalf. In support of his work, the debtor formed three companies: Brooks Entertainment Group, LLC ("Brooks Entertainment"), Meshach Music Group LLC ("Meshach"), and Kenloky Enterprises, LLC ("Kenloky").

The debtor formed Brooks Entertainment in 2006. Brooks Entertainment is a management company primarily focused on acquiring new clients and making deals on behalf of those clients. Clients were typically artists who already had value in the entertainment industry. Brooks Entertainment also held legal title to a home in New York. Brooks Entertainment no longer operates and no longer makes money, but has not been dissolved by the debtor.

The debtor formed Kenloky in 2007. Kenloky initially operated a studio; however, the debtor eventually used Kenloky to rent the studio out to other artists. Kenloky does not have any assets.

The debtor formed Meshach in 2015. Meshach is a production company through which the debtor develops artists so that they eventually would have value in the entertainment industry. At the time the debtor filed his petition, Meshach

7

was still in operation, but did not have any assets or clients and was not making money.

Although the debtor testified that none of his companies ever made money, money did flow through the companies. The debtor testified that when money came into the businesses, the debtor reinvested that money into the debtor's businesses to further develop artists and produce talent. However, the money did not come into the business in predictable intervals. For instance, when the debtor signed deals for his clients, those deals may not have made any money right away, but instead may have resulted in income for the debtor's businesses a year or two later.

The debtor also opened various bank accounts both in his name personally and in the names of his businesses. Brooks Entertainment and Meshach have bank accounts in their names, but the debtor stopped using these accounts because they had negative balances. The debtor also has a personal bank account at Chase Bank with an account number ending in 8680.

During the debtor's time as a manager and promoter, the debtor and his businesses were parties to various lawsuits. While the debtor was living in Los Angeles, California, the debtor received a business loan from Comerica Bank for the purpose of investing money in a studio. The debtor personally guaranteed this

loan, and Comerica Bank sued the debtor for the money owed on the loan when the deal for the studio fell through. The suit resulted in garnishment of the debtor's personal bank account and the Brooks Entertainment account.

On September 17, 2017, a carjacker stole the debtor's leased 2016 Mercedes Benz. The debtor filed a police report with the East Cleveland police and filed a claim with his insurance provider, Nationwide Insurance, the next day. Many of the facts related to the insurance claim were stipulated to by the parties: Nationwide requested that the debtor attend a deposition, but the debtor's attorney advised him not to go; the debtor did not appear for his deposition with Nationwide; and the debtor believed that the claim was still open. Although the debtor later learned that Nationwide sent him a letter denying his claim, the debtor testified that he did not receive this letter.

The debtor explained that he did not acquire any clients in 2016 and 2017, and therefore he did not make any deals those years that would result in any income for him in 2018 and 2019. Although the debtor failed to acquire clients in 2016 and 2017, the debtor's prior deals made on behalf of past clients were still generating residual checks. In particular, near the end of 2017, the business manager for a prior client called to inform the debtor that there was a residual check from a deal for which the debtor was to receive 20 percent of the proceeds.

9

On December 19, 2017, the debtor opened a business checking account at Chase in the name of "Kenloky Enterprises, LLC" with an account number ending in 6706. He signed the business signature card with his name and the title "Member." At the debtor's direction, the residual check was electronically deposited into the Kenloky account ending in 6706 on December 20, 2017.

After the debtor struggled to acquire new clients in 2016 and 2017, the debtor sought other employment. In early 2018, the debtor began working for Hitco Entertainment. At Hitco, the debtor is the Vice President of Artists and Repertoire, meaning he scouts artists, signs artists to the company, develops artists, and handles various other jobs to help the artists. The debtor's work for Hitco requires him to spend a portion of his time in Atlanta, Georgia. The debtor pays $2,200 a month for a four-bedroom home in Fayetteville, Georgia, a suburb south of Atlanta that is located 30 miles away from the main studios at which he works. At the meeting of creditors, the debtor stated that he is living in the house because it is close to his studio. However, at trial, the debtor clarified that he is living there because the property is owned by a friend who allows him to rent the house for the same amount that he would pay for an apartment or townhouse.

The debtor made various other personal transfers and deposits into the Kenloky bank account. On March 7, 2018, the IRS deposited, at the debtor's

10

direction, the joint 2017 federal tax refund belonging to himself and his wife into the Kenloky account. In early 2018, when the debtor began working for Hitco, he arranged for his paychecks to be deposited into the Kenloky account to avoid Comerica Bank's garnishment on his personal bank account and the Brooks Entertainment account. The debtor testified that a representative of Chase bank informed him that doing so was permissible because his personal name was on the Kenloky account.

*Bankruptcy Filing and Meeting of Creditors*

On March 14, 2018, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 18-11376). At the meeting of creditors, the debtor made various statements that conflicted with his bankruptcy petition, schedules, bank statements, and earlier statements made at the meeting of creditors.

The debtor made false statements related to the bank accounts belonging to him personally and to his businesses. The Chapter 7 trustee questioned the debtor about where Hitco Entertainment was depositing his paychecks. The debtor stated that his paychecks were being deposited into his personal account at Chase. When the Chapter 7 trustee asked for clarification because he had not seen any paychecks deposited from Hitco on the debtor's personal bank account statements for the

11

account ending in 8680, the debtor affirmed that the paychecks were being deposited into his Chase account. However, at a later point during the meeting of creditors, the Chapter 7 trustee again questioned the debtor about his paychecks, and the debtor stated that the paycheck was being deposited into his business account. The debtor indicated that the Kenloky account also operated as his personal account, as Chase allowed him to deposit checks made out to him personally because the business account had his name on it. Thus, despite the debtor stating that he only had one personal account at Chase and that his paychecks were deposited into his personal account, the debtor's paychecks were being deposited into the Kenloky business account ending in 6706, which the debtor treated as a personal account. When the Chapter 7 trustee asked why the debtor did not list the Kenloky account in his personal bankruptcy petition, the debtor stated, "[b]ecause it's a business account."

The debtor also made false statements related to his living arrangements in Georgia. As the U.S. Trustee was asking the debtor about his living arrangements, the debtor indicated that he needed to be close to the studio at which he works because he often worked long hours. The U.S. Trustee then asked for the addresses of the studios, and the debtor replied that there were several studios located in the South Georgia area. However, the studios are located north of

12

Atlanta, not in South Georgia as the debtor indicated. The Court believes that the debtor was less than candid about this rental arrangement at his meeting of creditors in part because he was reluctant to identify on the record his friend—a singer and reality television personality—whose home he was renting.

## DISCUSSION

The trustee seeks to have the Court deny the debtor a discharge under 11 U.S.C. § 727(a)(2) and (a)(4)(A). Section 727 provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
> . . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > (B) property of the estate, after the date of the filing of the petition;
> . . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> > (A) made a false oath or account . . .

The party seeking to deny the debtor's discharge must prove each element of an action under Section 727 by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679 (6th Cir. 2000); *Barclays/Am. Bus. Credit*

13

*Inc. v. Adams (In re Adams)*, 31 F.3d 389 (6th Cir. 1994). An action to deny the debtor a discharge is to be construed liberally in favor of the debtor and strictly against the party seeking denial of discharge. *See In re Keeney*, 227 F.3d at 683.

*Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A)*

The purpose of Section 727(a)(2)(A) "is to prevent the discharge of a debtor who attempts to avert collection of his debts by concealing or otherwise disposing of assets." *In re McNamara*, 89 B.R. 648, 650 (Bankr. N.D. Ohio 1988). To prevail on a claim under Section 727(a)(2)(A), the plaintiff must establish "(1) a disposition of property, such as concealment, and (2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.' " *In re Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). In addition, "the property disposed of, or concealed, must be property of the debtor and the disposition or concealment must have occurred within one year before the date the petition was filed." *McDermott v. Kerr (In re Kerr)*, No. 15-3085, 2017 Bankr. LEXIS 2447, at *25 (Bankr. N.D. Ohio Aug. 30, 2017). Fraudulent intent may be established by circumstantial evidence or by inferences drawn from the debtor's conduct. *See In re Keeney*, 227 F.3d at 684; *In re Adams*, 31 F.3d at 394. "Concealment

14

includes overt acts of disguise and 'other conduct, such as placing assets beyond the reach of the creditors or withholding knowledge of the assets by failure to divulge owed information.' " *Carter-Jones Lumber Co. v. Beatty (In re Beatty)*, 583 B.R. 128, 136–37 (Bankr. N.D. Ohio 2018) (citing 6 Collier on Bankruptcy ¶ 727.02[6][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017)).

Each of the debtor's actions that placed money into the Kenloky account involved property of the debtor and occurred within one year prior to the filing of the debtor's petition. The paychecks from Hitco and the funds in the debtor's accounts were undisputedly property of the debtor. Additionally, the debtor's use of Kenloky to conceal his property occurred within one year before the date of filing the debtor's bankruptcy petition, as the debtor opened the Kenloky account in December 2017, about four months prior to filing for bankruptcy.

There was a disposition of property of the estate, specifically concealment, when the debtor arranged for his income, including his salary from Hitco and his 2017 federal income tax refund, to be deposited into the Kenloky business account ending in 6706. When the debtor began working at Hitco, the debtor requested that his salary be deposited in the Kenloky account ending in 6706. Placing the money in the Kenloky account was conduct that placed assets out of the reach of

15

creditors, as Comerica Bank's garnishment did not extend to the newly-opened Kenloky account.

The debtor also had the subjective intent to hinder or defraud creditors when he arranged for his earnings to be deposited into the Kenloky account. At trial, the debtor explained that when he got a new job, he arranged for his earnings to be deposited into the Kenloky account to avoid the garnishment on the Brooks Entertainment and personal accounts:

> I just had the money go [into the Kenloky account] because I'm just starting a new job, I'm underwater everywhere, I don't have anywhere for money to go. So, am I going to start a new job and have nowhere for the money to go because I'm getting garnished in other accounts and I'm upside down? . . . That was my only thought process in, you know finally finding a job to get myself from underwater and having the money come there and not go straight into a garnishment.

The debtor further explained his reasoning behind depositing his paychecks into the Kenloky account:

> **U.S. Trustee**: Okay, so you opened up the Kenloky account, as you testified earlier, so you could have some of the residuals have an account that it could go into.
>
> **Debtor**: Yeah . . . when they called me that day about my residuals again—
>
> **U.S. Trustee**: And that was at the—
>
> **Debtor**: End of [2017]
>
> . . . .

16

> **U.S. Trustee**: The Hitco Entertainment, your paycheck, you had it deposited into that Kenloky Enterprises—
>
> **Debtor**: Yes.
>
> **U.S. Trustee**: —account?
>
> **Debtor**: Yes.
>
> **U.S. Trustee**: Okay. And you did that because you did not want to risk that money being garnished in your personal account.
>
> **Debtor**: Yeah, [be]cause [the Chase Bank representative] told me that they had filed some kind of garnishment against the personal and the Brooks [Entertainment accounts]. So, she just said that she had filings, she could see them in the computer I guess, so. . . . I was like I finally got a job, I need somewhere, I need somewhere for my check to go and not to get taken.

Thus, the debtor admitted in his testimony at trial that he had the subjective intent to defraud or hinder his creditors. Because the debtor sought to avoid Comerica Bank's garnishment and not allow Comerica Bank to obtain access to his income, he arranged for his income to be deposited into his Kenloky account, an account to which the garnishment did not extend.

In addition to the debtor's admission that he used the Kenloky account to avoid garnishment, the debtor's bank transactions also provide evidence of the debtor's intent to maintain low account balances in those accounts subject to possible garnishment. The debtor's transactions listed on the bank statement dated

17

December 6, 2017, to January 4, 2018, for his personal account ending in 8680 are illustrative of the debtor's attempts to maintain a low balance in this account. Although the bank statements for the personal account ending in 8680 do not provide end-of-day balances, they do show that the debtor on several days made numerous separate online transfers. For example, the debtor made nine separate online transfers from the Kenloky account ending in 6706 to the personal account ending in 8680 on December 26, 2017, and eight separate online transfers on January 2, 2018. These online transfers into the personal account appear to be roughly equal to the debits and other withdrawals from the personal account for the same dates. On January 4, 2018, the personal account ending in 6706 had an ending balance of $37.84.

Given the debtor's admission of his intent to avoid the bank's garnishment as well as his numerous transfers between the Kenloky and personal accounts, the Court finds that the U.S. Trustee has established by a preponderance of the evidence all of the elements for the denial of discharge under Section 727(a)(2).

*Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A)*

In *In re Keeney*, the Sixth Circuit established the elements that the plaintiff must prove in order for a court to deny a debtor a discharge under Section 727(a)(4)(A):

> In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*In re Keeney*, 227 F.3d at 685.

The evidence at trial demonstrates that the debtor made a number of false statements in his bankruptcy filings and at his meeting of creditors. Whether these false statements warrant a denial of discharge turn on whether the statements were made with the fraudulent intent required under Section 727(a)(4)(A). Given that the Court has already determined that the U.S. Trustee has proven by a preponderance of the evidence the elements required to deny the debtor a discharge under Section 727(a)(2)(A), the Court finds it unnecessary to determine whether these statements were made with fraudulent intent.

## CONCLUSION

For the reasons stated above, the Court enters judgment in favor of the U.S. Trustee and denies the debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

IT IS SO ORDERED.